Matter of Jehrica K. v Erin J. (2024 NY Slip Op 00218)

Matter of Jehrica K. v Erin J.

2024 NY Slip Op 00218

Decided on January 18, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 18, 2024

CV-23-0330
[*1]In the Matter of Jehrica K., Appellant,
v
Erin J., Respondent. (And Three Other Related Proceedings.)

Calendar Date:December 13, 2023

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, McShan and Mackey, JJ.

Lisa K. Miller, McGraw, for appellant.
Christopher Hammond, Cooperstown, for respondent.
Michelle E. Stone, Vestal, attorney for the child.

Lynch, J.
Appeal from an order of the Family Court of Chemung County (Mary M. Tarantelli, J.), entered January 17, 2023, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of the subject child (born in 2016). A modified custody order entered in August 2021 awarded the parties joint legal and physical custody of the child, with the father having final decision-making authority over certain decisions and the parties sharing parenting time on a two-week rotating basis.[FN1] The August 2021 order also prohibited contact between the child and Roland J. — the child's paternal great uncle (hereinafter the great uncle) who is also the father of three of the mother's other children — unless supervised by a third party.
In December 2021, the mother filed a modification petition seeking primary physical custody of the child, alleging, among other things, that the father and his wife (hereinafter the stepmother) fought in front of the child and the child had witnessed the father "smash windows" during one of the fights. She also alleged that the stepmother had tested positive for COVID-19 and that the father had failed to advise her of same. The father, in turn, filed three modification petitions seeking primary physical custody, and also requested that the mother's parenting time be reduced and supervised.[FN2] He alleged, among other things, that the mother had allowed the child to be around the great uncle without a third-party supervisor, was not providing appropriate supervision and was verbally abusive. He also noted that the mother's youngest child — a newborn baby — had since passed away due to an unsafe sleeping position and that the mother was under investigation by Child Protective Services (hereinafter CPS) in this regard. According to the father, after the baby passed away, the mother began taking the subject child to her friend's house in Pennsylvania during her parenting time, where they resided overnight and the child was required to share a bed with the adult friend.
Family Court ordered an investigation pursuant to Family Court Act § 1034 and thereafter held fact-finding and Lincoln hearings. Following the hearings, Family Court denied the mother's modification petition, finding that she failed to support her allegations with "credible evidence." The court granted the father's modification petitions to the extent of awarding him primary physical custody of the child and reducing the mother's parenting time to alternate weekends and every Wednesday overnight, but otherwise maintained the award of joint legal custody set forth in the August 2021 order. The mother appeals.[FN3]
The threshold question in a custody modification proceeding is whether there has been "a change in circumstances since the entry of that prior order so as to trigger an examination as [*2]to whether modification would serve the child's best interests" (Matter of Joshua KK. v Jamie LL., 204 AD3d 1345, 1346 [3d Dept 2022]; see Matter of Shayne FF. v Julie GG., 221 AD3d 1202, 1203 [3d Dept 2023]). Finding that the father satisfied this prima facie burden, Family Court emphasized that, since entry of the prior order, the mother's infant child had died in her care, she had taken the subject child to stay with a friend in Pennsylvania for an extended period of time, and she had been indicated by CPS for improper supervision of the child. By contrast, the court determined that the mother failed to establish her claims about an ongoing volatile environment at the father's home or how the father's failure to advise her that the child had been exposed to COVID-19 warranted a change in custody. These findings are amply supported by the record and, contrary to the mother's contentions, we conclude that Family Court properly proceeded to a best interests analysis on the father's petitions.
Turning to best interests, we discern no basis upon which to disturb Family Court's finding that the best interests of the child would be served by granting the father primary physical custody of the child and reducing the mother's parenting time. " 'In making a best interests determination, Family Court must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being' " (Matter of Andrea II. v Joseph HH., 203 AD3d 1356, 1357-1358 [3d Dept 2022] [brackets omitted], quoting Matter of Mathena XX. v Brandon YY., 189 AD3d 1733, 1735 [3d Dept 2020]). Since Family Court " 'is in a superior position to evaluate the testimony and credibility of witnesses, we accord great deference to its factual findings and credibility assessments and will not disturb its determination if supported by a sound and substantial basis in the record' " (Matter of Andrea II. v Joseph HH., 203 AD3d at 1358, quoting Matter of Zachery VV. v Angela UU., 192 AD3d 1220, 1223 [3d Dept 2021]).
The testimony at the fact-finding hearing established that, as between the parties, the father was better equipped to provide a stable home environment for the child. At that time, the father, who was gainfully employed, maintained a residence where the child had his own room and bathroom. The stepmother, with whom the child had a close relationship, was available for the child after school on the days he was in the father's care. By comparison, the mother did not have a full-time job and had exhibited poor judgment with respect to the child's living situation while in her care, acknowledging that she had taken the child to stay overnight at an adult friend's camper in Pennsylvania [*3]for around two weeks even though the child had to share a bed with the friend while there.
At the fact-finding hearing, a senior caseworker with the Department of Social Services, who investigated the newborn baby's death between April and June 2022, testified that it was determined that the mother provided inadequate guardianship by placing the infant in an "unsafe sleeping environment" despite having received safe sleeping counseling from the department. The caseworker also raised concerns about the state of the mother's home at that time, describing dirty and unkempt conditions, medication bottles and chemicals within reach of the children, and a dog crate full of dog feces. The caseworker acknowledged that the mother had promptly improved the conditions of her home upon being made aware of the caseworker's concerns. The mother, however, displayed an ongoing lack of good judgment, asking during the fact-finding hearing, "Why does it matter? My house is clean . . . . Do we really have to bring this up?" There was also evidence that the mother had been indicated for inadequate guardianship of the subject child pertaining to an incident during which he was injured by his younger sibling while in the mother's care, requiring a trip to the hospital and stitches. By contrast, there were no indicated reports against the father. During her testimony, the mother consistently exhibited a lack of understanding about the impact of her conduct on the child's welfare, maintaining that questions about the living arrangements of her friend in Pennsylvania and the circumstances surrounding the death of her newborn were irrelevant in this proceeding.
When considering the foregoing and deferring to Family Court's credibility determinations, we conclude that there is a sound and substantial basis for the award of primary physical custody to the father and the concomitant reduction in the mother's parenting time (see Matter of David V. v Roseline W., 217 AD3d 1112, 1114 [3d Dept 2023], lv denied 40 NY3d 905 [2023]; Matter of Lynn X. v Donald X., 162 AD3d 1276, 1278 [3d Dept 2018]; Matter of Richard Y. v Vanessa Z., 146 AD3d 1050, 1051 [3d Dept 2017]). We also find the mother's ineffective assistance of counsel claim to be unavailing. Upon considering the totality of the representation, we cannot conclude that it was anything less than meaningful (see Matter of Farideh P. v Ahmed Q., 202 AD3d 1391, 1394 [3d Dept 2022], lv denied 38 NY3d 909 [2022], cert denied ___ US ___, 143 S Ct 606 [2023]; Matter of Ronan L. [Jeana K.], 195 AD3d 1072, 1077 [3d Dept 2021]).
The mother additionally argues that the trial judge exceeded her judicial role by calling as its own witness the DSS caseworker who investigated the circumstances attendant the infant child's death and directly examining this witness herself. Where, as here, a trial judge calls her own witness, the same principles attendant a court's assuming an active role in the truth-seeking process apply (see People v Arnold[*4], 98 NY2d 63, 67-68 [2002]; People v Jamison, 47 NY2d 882, 883 [1979]; Matter of Keuleman v Earp, 188 AD3d 1063, 1064 [2d Dept 2020], lv denied 36 NY3d 1074 [2021]). In the unusual situation where a trial court does so, the court "should explain why, and invite comment from the parties" (People v Arnold, 98 NY2d at 68). Here, at the continuation of the fact-finding hearing on December 1, 2022, Family Court simply announced that it was calling the senior caseworker out of order and inquired whether there were any objections. While the court's protocol was improper, having failed to object, the mother's argument in this regard is unpreserved (see Matter of Denise L. v Michael L., 138 AD3d 1172, 1173-1174 [3d Dept 2016]). In any event, since all parties were able to review the Family Court Act § 1034 draft report and were given the opportunity to question this witness (see Matter of Bercaw v Hood, 248 AD2d 881, 882 [3d Dept 1998]; see Merril Sobie, Prac Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Court Act § 1034 at 444-445 [2023 ed]), the mother has not shown reversible error as a matter of law (compare People v Arnold; 98 NY2d at 67-68; see generally Matter of Denise L. v Michael L., 138 AD3d at 1173-1174; Matter of Colona v Colona, 125 AD3d 1123, 1125-1126 [3d Dept 2015]). Even so, given the court's decidedly active role with regard to this witness, we take this opportunity to remind the court that it must strictly avoid assuming "the function or appearance of an advocate at trial" (People v Arnold, 98 NY2d at 67; accord Matter of C.H. v F.M., 130 AD3d 1028, 1029 [2d Dept 2015]).
We also take note that the attorney for the child maintains that Family Court's decision is supported by a sound and substantial basis in the record. The mother's remaining contentions, to the extent not explicitly addressed, have been considered and found lacking in merit.
Garry, P.J., Reynolds Fitzgerald, McShan and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The August 2021 order modified a November 2020 consent order that had awarded the mother sole legal and primary physical custody, with a schedule of parenting time for the father.

Footnote 2: One of the father's petitions generically sought "full custody." The final petition, however, expressly sought to maintain the award of shared legal custody as set forth in the prior order.

Footnote 3: The mother has also perfected an appeal from the August 2021 order (see Matter of Erin J. v Jehrica K., ___ AD3d ___ [3d Dept 2024] [decided herewith]).